992 So.2d 506 (2008)
Linda Rholdon CLEMENT and Alan J. Rholdon, Individually and as Representatives of the Estate of Lori Ann Rholdon
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Leia T. Oubre, Regina W. Khouri, Edmond J. Oubre, Jr., Kyle E. Grace, Reginald Grace, Louisiana State University, Sentinel Insurance Company, Ltd., ABC Insurance Company, DEF Insurance Company, and GHI Insurance Company.
No. 2008 CA 0014.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
Writ Denied October 3, 2008.
Thomas A. Rayer, Jr., Michael H. Bagot, Jr., New Orleans, Louisiana, for Plaintiffs/Appellants, *507 Linda Rholdon Clement and Alan J. Rholdon.
Timothy E. Pujol, Barbara Irwin Messina, Matthew W. Pryor, Brittany Keaton Martin, Gonzales, Louisiana, for Defendant/Appellee, State Farm Mutual Automobile Insurance Co.
Before PARRO, KUHN and DOWNING, JJ.
KUHN, J.
The issue presented in this appeal is the validity of an Uninsured/Underinsured Motorist Bodily Injury Coverage Form ("UM Coverage Form,") which purports to waive uninsured/underinsured motorist ("UM") coverage, but bears an application number instead of a policy number. The trial court found the UM Coverage Form was valid and granted a motion for summary judgment filed by defendant, State Farm Mutual Automobile Insurance Company ("State Farm"). Thus, the trial court dismissed the claims of plaintiffs, Linda Rholdon Clement and Alan J. Rholdon, against State Farm in its capacity as the alleged UM carrier of Mr. Rholdon.[1] Because we agree with the trial court that the UM Coverage Form at issue was "properly completed" under La. R.S. 22:680(1)(a)(ii), and thus, because State Farm established a valid waiver of UM coverage by Mr. Rholdon, we affirm the trial court's judgment.

I. PROCEDURAL AND FACTUAL BACKGROUND
According to the allegations of the petition, Lori Ann Rholdon, a passenger in a vehicle driven by Leia T. Oubre, died as the result of an automobile collision, which occurred on January 31, 2005. Mrs. Clement and Mr. Rholdon, Lori's biological parents and the representatives of her estate, filed suit against State Farm, in its capacity as Mr. Rholdon's alleged UM carrier.[2]
State Farm generally denied the allegations of the petition, and it later filed a motion for summary judgment, asserting, "While State Farm did provide a policy of liability insurance to [Mr. Rholdon] at the time of the subject accident, said policy does not provide [UM] coverage, as [Mr. Rholdon] had specifically waived said coverage by signing a valid waiver." In support of its motion, State Farm submitted a copy of its policy numbered 40 5207-B22-18A, a copy of a declaration sheet for the policy period, August 22, 2002 to February 22, 2003; the UM Coverage Form at issue, and an affidavit of State Farm's employee, Jamold Little.
The UM Coverage form bore Mr. Rholdon's printed name, his signature, and his initials next to the selection, "I do not want [Uninsured/Underinsured Motorists Bodily Injury] Coverage." The form was dated "8/22/01," and "18 1716 L03" was written on the line above the words, "Policy Number." The parties acknowledge that this number was an application number rather than a policy number. No policy number was referenced on the form.
Mr. Little's affidavit states, in pertinent part:
At the time of the aforementioned accident [January 31, 2005], State Farm provided liability insurance to Alan Rholdon. Said policy did not provide [UM] coverage, as Alan Rholdon signed a valid waiver of such coverage on August 22, 2001.
On August 22, 2001 when Alan Rholdon signed the waiver, the waiver form identified *508 the policy using application number 18-1716-L03.
The application number is not a policy number. It is the number used to identify an application for coverage, and once the application is accepted, a policy number is issued.
When application number 18-1716-L03 was accepted by State Farm, it became policy number 40 5207-B22-18A.
Policy number 40 5207-B22-18A was in effect on the date of the subject accident, January 31, 2005.
Policy number 40 5207-B22-18A did not provide [UM] coverage on the date of the subject accident, January 31, 2005.
After the trial court signed its judgment in favor of State Farm, plaintiffs appealed, asserting the trial court erred in concluding the UM waiver was valid.

II. ANALYSIS
When an appellate court reviews a trial court judgment on a motion for summary judgment, it applies the de novo standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." Gray v. American Nat. Property & Cas. Co., 07-1670 (La.2/26/08), 977 So.2d 839, 844; see La. C.C.P. art. 966 B.
In reviewing this judgment, we must apply the burden of proof imposed upon a movant in a motion for summary judgment, which is set forth as follows in La. C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Under the UM coverage statute, La. R.S. 22:680, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected.[3]Duncan v. U.S.A.A. Ins. Co., 06-363, *509 p. 4 (La.11/29/06), 950 So.2d 544, 547. UM coverage embodies a strong public policy. Id. The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Id. UM rejection "shall be made only on a form prescribed by the commissioner of insurance." La. R.S. 22:680(1)(a)(ii). The statute provides, in part, that "[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." Id.
The UM coverage statute is to be liberally construed. Duncan, 06-363 at p. 4, 950 So.2d at 547. Accordingly, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Id. 06-363 at p. 5, 950 So.2d at 547. Ultimately, a determination of whether State Farm was entitled to summary judgment depends on whether it carried its burden of producing factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial, i.e., by producing a valid UM Coverage Form by which the named insured under the policy, Mr. Rholdon, rejected such coverage.
In Duncan, the supreme court addressed whether the UM Coverage Form, prescribed for selection of UM coverage by the commissioner of insurance, must contain the insurance policy number in order for a waiver to be effective. The court addressed the six tasks entailed in the commissioner of insurance's form that they found were pertinent for a valid rejection of UM coverage: 1) initialing the selection or rejection of coverage chosen; 2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; 3) printing the name of the named insured or legal representative; 4) signing the name of the named insured or legal representative; 5) filling in the policy number; and 6) filling in the date. The supreme court ultimately found that the "failure to fill in the policy number on the form prescribed by the commissioner of insurance invalidates the UM waiver, and consequently, the UM coverage is equal to the liability limits of the policy." Id., 06-363 at p. 13, 950 So.2d at 554.
Since Duncan, the supreme court has concluded, however, that filling in the policy number is not essential to a valid UM coverage waiver where the evidence establishes that no policy number was available at the time of the execution of the UM Coverage Form. Insurance Commissioner Bulletin LIRC 98-03 specifically provides, "[I]n the case where a policy number is not available, the space for the policy number may be left blank or a binder number may be inserted." See Carter v. State Farm Mut. Auto. Ins. Co., 07-1294 (La.10/5/07), 964 So.2d 375, 376. Further, in Gray v. American Nat. Property & Cas. Co., 07-1670 at p. 11 n. 2, 977 So.2d at 847 n. 2, the supreme court stated:
Following Duncan, this court acknowledged in Carter v. State Farm Mutual Automobile Ins. Co., 07-1294 *510 (La.10/5/97), 964 So.2d 375, that "the Commissioner of Insurance's regulations specifically allow omission of the policy number if it does not exist at the time UM waiver form is completed." In fact, Insurance Commissioner Bulletin LIRC 98-03 provides as follows: "In the case where a policy number is not available, the space for the policy number may be left blank or a binder number may be inserted." The record in this case indicates that the policy number was available when the UM selection form(s) were signed. Therefore, we will continue to refer to the "six tasks" necessary for a valid UM selection form in this case. We note however that a case where the policy number is not available, only five "tasks" would be necessary for a valid UM selection form.
In the present case, Mr. Little's affidavit establishes that the policy number was not available when Mr. Rholdon signed the UM Coverage Form; it did not become available until State Farm accepted Mr. Rholdon's application for insurance, at which time the policy number was issued.[4] Accordingly, the trial court correctly concluded that the insertion of the application number on the form in the space designated for a policy number did not invalidate the form. Thus, State Farm produced factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial, i.e., that Mr. Rholdon rejected UM coverage by initialing and signing the UM Coverage Form, indicating he did not want UM coverage.
At that point, the burden shifted to plaintiffs to rebut the presumption that Mr. Rholdon knowingly rejected UM coverage. Because plaintiffs presented no evidence to counter the valid UM Coverage Form, we conclude, as the trial court did, that there are no genuine issues of material fact, and that State Farm is entitled to judgment as a matter of law.

III. CONCLUSION
For these reasons, we affirm the trial court's judgment. Appeal costs are assessed against plaintiffs, Linda Rholdon Clement and Alan J. Rholdon.
AFFIRMED.
NOTES
[1] The judgment also denied a cross motion for summary judgment filed by plaintiffs.
[2] The petition named other defendants not pertinent to this appeal.
[3] La. R.S. 22:680(1)(a) provides, in pertinent part:

(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. . . .
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. . . .
[4] The parties do not dispute that the UM Coverage Form signed by Mr. Rholdon was in the form prescribed by the Commissioner of Insurance.